UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

LISA ORSLINI,                                              Case No.: 21-71374-reg
                                                           Chapter 7


                                        Debtor.
------------------------------------------------------------------x
LONG ISLAND MINIMALLY INVASIVE SURGERY, P.C.
d/b/a NEW YORK BARIATRIC GROUP,

                                        Plaintiff,          Adv. Pro. No. 21-8146-reg

                - against -

LISA ORSLINI,
                                        Defendant.
------------------------------------------------------------------x

**DECISION AFTER TRIAL**

        Before the Court is an adversary proceeding commenced by Long Island Minimally

Invasive Surgery P.C. d/b/a New York Bariatric Group (the "Plaintiff") seeking a determination

that the Plaintiff's $54,128.60 claim against the Debtor/Defendant, Lisa Orslini (the "Debtor" or

"Defendant") is non-dischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6).

        The Plaintiff provided a variety of elective surgical procedures to the Debtor pre-petition.

The Plaintiff did not require advance payment from the Debtor based on the Debtor's agreement

to remit to the Plaintiff the value of all reimbursements she received from her insurance, *i.e.,* the

Debtor agreed to either turn over the insurance checks or pay the Plaintiff the value of the

checks. However, the Debtor failed to turn over the insurance checks or their value as per her

agreement. Despite attempts by the Plaintiff to get paid, the Debtor failed to pay for the services

she requested and received. Simply put, the Debtor sought services from the Plaintiff, the

Plaintiff provided those services, the Debtor received insurance benefits to pay for those services

and the Debtor then failed to pay despite her agreement to do so. Having failed to turn over the insurance proceeds to the Plaintiff, the Debtor ended up profiting from this scheme and offered no explanation for her actions.

The Plaintiff's claim in this case is based on a state court default judgment against the Debtor in the amount of $54,128.60 for breach of contract and conversion. The Plaintiff relies in part on the collateral estoppel effect of the default judgment and that court's decision finding that the Plaintiff had proven its asserted claims, including the claim for conversion. The Plaintiff also argues that the facts established in the trial of this § 523 case show that the Debtor fraudulently induced the Plaintiff to perform elective medical procedures for her based on the Debtor's agreement that she would turn over to the Plaintiff all insurance reimbursement checks, or their value.

The Debtor, who was present for the trial, did not avail herself of the opportunity to testify or offer any evidence refuting the Plaintiff's allegations, leaving the record barren of any credible defense to the allegations set forth in the complaint which were supported by testimony of the Plaintiff's witness. The Debtor argues in her post-trial memorandum that Plaintiff failed to establish it was the Debtor's intent to harm the Plaintiff in any way that would give rise to non-dischargeability under §§ 523(a)(2), (4), or (6). And, even if the Debtor did receive and convert the insurance proceeds with the requisite intent, she argues that the checks only account for $2,830.70 of the total judgment and non-dischargeability should be limited to that amount.

For the reasons that follow, the Court finds that the Plaintiff's claim is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).

## FACTS

The Plaintiff is a surgical center that performed a series of elective procedures on the Debtor between January 2006 and March 2018. Def's Aff. in Opp. to Mot. for Default J., ECF No. 13, ¶5[1]. The doctor(s) at the Plaintiff's practice who performed these services did not accept the Debtor's insurance plan and as such the Plaintiff was an "out-of-network" provider. Transcript of Oct. 11, 2022 Trial ("Tr."), at 48-49. As an out-of-network provider, it was the Plaintiff's practice not to require up-front payment from patients, including the Debtor. *Id.* at 69. The Plaintiff, as per its agreement with the Debtor, submitted invoices for the costs of the procedure to the Debtor's insurance company. *Id.* at 15. The Plaintiff had no contractual relationship with the insurance company, and so all payments by the insurance company for procedures performed on the Debtor were sent directly to the Debtor. *Id.* at 14. Although the amount reimbursed by the insurance company was significantly less than the full amount invoiced by the Plaintiff for any given procedure, the Plaintiff agreed to accept the amount of the insurance reimbursement as payment in full for its services as long as the Debtor as per her agreement forwarded all insurance checks or their value to the Plaintiff, along with any out-of-pocket costs such as co-payments and/or deductibles pursuant to the terms of the Debtor's insurance policy. *Id.* at 26. Under this agreement the Debtor would not be liable for the difference between the insurance reimbursement and the invoiced amount. *Id.* at 26. However, if the Debtor breached the agreement by failing to turn over an insurance reimbursement or its value, then she would be liable for the full invoiced amount. *Id.* at 26-27.

---

[1]        Unless otherwise noted, ECF references are to the adversary proceeding docket, No. 21-8146.

From January 2006 to June 2013, the Debtor honored her obligations to the Plaintiff regarding payment and turnover of insurance checks. Aff. in Supp. of Mot. to Strike Def.'s Answer and for Entry of a Default J., ECF No. 11, at 3, ¶ 4; Def's Aff. in Opp. to Mot. for Default J., ECF No. 13, ¶5. In August of 2014, following a brief hiatus in treatments, the Debtor signed two documents: an Assignment of Insurance Benefits and Right of Recovery Form ("Assignment of Benefits") (Pl.'s Ex 1), and an Out-of-Network Payment Agreement ("Payment Agreement") (Pl.'s Ex. 2). Pursuant to the Assignment of Benefits, the Debtor assigned to the Plaintiff "all rights, title and interest" in benefits payable for services rendered by the Plaintiff.[2] Pl.'s Ex. 1. The Debtor also agreed to pay the Plaintiff "for all charges incurred or alternatively, for all charges excess of the sums actually paid pursuant to said policies or plans". *Id.* The Payment Agreement provided that the Debtor's failure to forward insurance checks to the Plaintiff would result in the Debtor becoming liable for the "full amount charged for [her] surgery, plus the cost of legal fees, legal costs, and disbursements, with no courtesy discount." Pl.'s Ex. 2.

On August 22, 2014, the Plaintiff performed medical services for the Debtor. Pl.'s Ex. 3. On September 4, 5 and 6, 2014, the Plaintiff performed a three-day sleep study on the Debtor. *Id.* From August 3 through November 9, 2015, the Plaintiff performed various other medical services for the Debtor. *Id.* Finally, the Plaintiff treated the Debtor on March 16, 2018. *Id.* The Plaintiff alleged in state court, and alleges here, that it billed the Debtor's insurance company for services provided to the Debtor; the insurance company issued several checks to the Debtor totaling $2,838.70 as payment for said services; the Debtor failed to forward the checks to the

---

[2]     This assignment was to Dr. Shawn Garber, who assigned all of his rights to receive any funds from the Debtor to the Plaintiff. State Court Compl., n.1, *infra*.

Plaintiff; and the Plaintiff did not receive payment for its services. Def.'s Ex. C.[3] Upon her

failure to turn over the insurance checks or their value to the Plaintiff, invoices were issued to the

Debtor for the full amount of these services, $36,975.69, which the Debtor did not pay.[4] Pl.'s Ex.

3.

## PROCEDURAL HISTORY

On August 24, 2018, the Plaintiff filed a Verified Complaint in New York State Supreme

Court Nassau County asserting causes of action against the Debtor for breach of contract,

account stated, and conversion, and alleging damages of $36,150.30 from unpaid invoices

("State Court Complaint"). Def.'s Ex. C. The State Court Complaint alleged the Debtor's

insurance company "delivered, in total, $2,838.70[5] via multiple checks, to the Debtor to cover a

portion of the Plaintiff's charges." State Court Compl. ¶ 20. It also alleges:

---

[3]    Although the State Court Complaint, an affidavit submitted in support of default judgment in the state court, and the state court decision on the Plaintiff's motion for default judgment were marked as Defendant's exhibits C, D and E, they were never admitted into evidence at trial. Despite not being admitted into evidence, this Court will take judicial notice of the adjudicative facts contained in these documents. *See* Fed. R. Evid. 201; *see also Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"); *E.I. Du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5, 9 (1st Cir. 1986) (taking judicial notice of a state court complaint that, although not formally placed into evidence, was in the appendix to the trustee's district court brief). Here, neither party objects to the validity of these state court pleadings or the decision. The judicial notice taken here by the Court is not a finding that the facts alleged in these documents are true nor is it a ruling on the preclusive effect they have on this Court. Those issues are separately examined.

[4]    The Court is unable to explain the minor discrepancies between this amount ($36,975.69), and the $36,150.30 which is the unpaid balance referenced in paragraph 17 of the State Court Complaint, and the $36,966.53 referenced in the Judgment. However, the discrepancies are minor, and it is the Judgment amount that controls.

[5]    The Plaintiff alleged that the Debtor received four checks from her insurer, in the amounts of $655.48, $727.74, $727.74 and $727.74, for the services and treatment the Debtor received from the Plaintiff. State Court Compl. ¶ 42.

> Defendant was aware that the insurer would send her checks for Defendant to use to pay for the [Plaintiff's] services and treatment.
>
> The [Plaintiff] had multiple telephone calls and emails with Defendant about the fact that the insurer would send checks to the Defendant, and about the Defendant's obligation to remit those funds to the [Plaintiff].
>
> Indeed, Defendant promised, on multiple occasions, that she would remit the funds from the insurer with the [Plaintiff]. Despite her promises to do so and her knowledge that she was obligated to provide those funds to Plaintiff, Defendant has pocketed the money from the insurer and converted assets rightfully belonging to the [Plaintiff].

State Court Compl. ¶¶ 21-23.

Although the Debtor did appear and file an answer in the state court case, she failed to appear for preliminary conferences which prompted a motion for default judgment by the Plaintiff. On October 25, 2019, the state court issued a written opinion granting the Plaintiff's motion for default judgment (Def.'s Ex. E, Short Form Order, dated October 25, 2019), and on November 18, 2019, default judgment was entered against the Debtor in the amount of $54,128.60, which included damages of $36,966.53, plus costs of $454.50, interest of $10,482.57, and fees of $6,225 ("Judgment"). Pl.'s Ex. 4. The state court found that "the Plaintiff prove[d] its claims in the affidavit of Jacqueline Spina, Billing Manager for the Plaintiff, and the supporting exhibits." Def.'s Ex. E, Short Form Order at 4.

On July 29, 2021, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. The Debtor scheduled an unsecured obligation to the Plaintiff in the amount of $36,966.53. Case No. 21-71374, ECF No. 1, Sch. E/F.

On September 27, 2021, the Plaintiff commenced this adversary proceeding alleging that the full amount of the Judgment debt is non-dischargeable under 11 U.S.C.§§ 523(a)(2), (4), and (6). ECF No. 1. On October 26, 2021, the Debtor filed an Answer. ECF No. 4. The parties filed separate Pre-Trial Memoranda (ECF Nos. 17, 19), and a trial was held on October 11, 2022.

Jacqueline Spina, the Plaintiff's current Patient Relations Manager and former Billing Manager ("Spina"), testified for the Plaintiff. The Debtor did not testify.

## DISCUSSION

The Judgment, as validly entered by the state court, is not subject to review by this Court. Therefore, the Plaintiff's claim based on the Judgment establishes the amount of the Debtor's monetary liability to the Plaintiff. The only issue to be decided here is whether the Debtor's actions which gave rise to the Judgment render all or part of the Judgment non-dischargeable under 11 U.S.C. §§ 523(a)(2), (4) or (6). Generally, a debtor's mere failure to pay a debt when it comes due is not a basis to find a debt non-dischargeable. The issue before the Court revolves around whether the Debtor's failure to remit to the Plaintiff the proceeds of the insurance reimbursements she received renders Plaintiff's claim non-dischargeable under the Bankruptcy Code.

At the commencement of the trial, the Plaintiff made an oral motion to preclude the Debtor from presenting evidence to contradict the allegation that she received and cashed the insurance checks. The basis for this request was two-fold: first, it was based on the Debtor's alleged willful failure to comply with discovery demands in this case; and second, the Plaintiff asserted that the Judgment, based on the State Court Complaint which included a claim for conversion, should be given collateral estoppel effect on that issue.

The Court denied the motion and found that the Debtor should be permitted to testify as to whether she received the insurance checks, and if she did receive them, what she did with the proceeds. Tr. at 4-8. At trial, however, the Debtor declined the opportunity to testify concerning her receipt of the checks as alleged by the Plaintiff and she did not offer any evidence to

contradict the Plaintiff's allegations that she received the insurance checks, she did not turn them

over to the Plaintiff, and she did not pay the Plaintiff the value of those insurance checks. Nor

did she offer any explanation as to what she did with the proceeds. The record is therefore barren

of any testimony or evidence that challenges the Plaintiff's assertions that the Debtor received

the checks and converted the proceeds to her own use. Aside from these uncontroverted

allegations at trial the record in this case also includes a Judgment against the Debtor for, among

other things, conversion which is entitled to collateral estoppel effect on the factual issue of the

Debtor's conversion of the insurance checks.

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the

identical issue necessarily was decided in the prior action and is decisive of the present action,

and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to

litigate the issue in the prior action." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir.

2007), *cert. denied,* 555 U.S. 1097 (2009) (citations omitted). Here, the state court issued a

default judgment against the Debtor. The Debtor does not dispute that she was properly served in

state court and was afforded the opportunity to contest the allegations. Therefore, the second

element of collateral estoppel is satisfied. As to the first element, the Court finds that the State

Court Complaint clearly alleged that the Debtor received the insurance checks and converted

them to her own use. The state court decision found there was sufficient evidence to conclude

that the Plaintiff had met its burden as to the allegations set forth in the complaint. Thus, this

Court finds that each claim was proven, including specifically the claim for conversion.

For these reasons, whether based on the unrefuted allegations in this case, or based on

principles of collateral estoppel, the Court finds that the Debtor received the insurance checks

and converted them to her own use. However, a finding of conversion alone does not satisfy the

elements of § 523, and the Court will now examine the specific claims of non-dischargeability alleged here in light of the Court's factual finding of conversion.

## I. Burden of Proof

The plaintiff has the burden of establishing an exception to discharge of a debt under § 523 by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 289–90 (1991). "Exceptions to discharge under § 523 must be . . . construed so as to give the maximum effect to the Code's policy of providing honest but unfortunate debtors with a 'fresh start.'" *Scheidelman v. Henderson (In re Henderson),* 423 B.R. 598, 616 (Bankr. N.D.N.Y. 2010) (citations omitted). Exceptions to discharge should be construed narrowly, "and genuine doubts should be resolved in favor of the debtor." *Hyman,* 502 F.3d at 66.

## II. Dischargeability Under § 523(a)(4)

A debt is non-dischargeable under § 523(a)(4) if it is one "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Court will address each of these bases under § 523(a)(4) in turn.

### A. *Fraud or Defalcation While Acting in a Fiduciary Duty*

To prove non-dischargeability for fiduciary fraud or defalcation, a plaintiff must show: "(1) an express [or technical] trust existed; (2) the debt was caused by fraud or defalcation; (3) the debtor acted as a fiduciary to the [plaintiff] at the time the debt was created." *784 Café Inc. et al v. Lang Chin (In re Lang Chin)*, 617 B.R. 761, 770 (Bankr. E.D.N.Y. 2020) (quoting *Palisades Tickets, Inc. v. Daffner* (*In re Daffner*), 612 B.R. 630, 651 (Bankr. E.D.N.Y. 2020)) (alterations in original). Although the Bankruptcy Code does not define "fiduciary capacity," courts in this Circuit have emphasized that the "broad, general definition of fiduciary, involving

9

confidence, trust and good faith, is not applicable in dischargeability proceedings under §

523(a)(4)." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998) (citations omitted). Section

523(a)(4) applies only to express or technical trusts, not constructive or implied trusts nor trusts

ex maleficio. *Id.*

The Court finds that the terms of the Assignment of Benefits and Payment Agreement did

not establish an express or technical trust between the Plaintiff and Debtor. It is well-settled that

a mere assignment of benefits does not establish a fiduciary relationship. *See Tulsa Spine*

*Hospital, LLC v. Tucker (In re Tucker)*, 346 B.R. 844 (Bankr. E.D. Okla. 2006) (finding that an

assignment of benefits did not give rise to a fiduciary relationship in bankruptcy); *University*

*Ortho. Assocs. v. Catalano (In re Catalano)*, 98 B.R. 168, 170 (Bankr. W.D.N.Y. 1989) (finding

that the assignment of benefits by a patient's parents to the hospital was insufficient to create an

express trust). Without a fiduciary relationship, the Court need not address the issues of whether

the Debtor committed fraud or defalcation.

### B.   *Embezzlement or Larceny*

Even in the absence of a fiduciary relationship, the debt may still fall within the §

523(a)(4) exception to discharge if the defendant is found to have embezzled the funds or

committed larceny. *Tucker*, 346 B.R. at 852. Embezzlement under federal law is "'the fraudulent

appropriation of property by a person to whom such property has been entrusted or into whose

hands it has lawfully come.'" *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir.

1988) (citation omitted). Larceny differs from embezzlement in that to prove a claim for larceny

the debtor must have come into possession of the property unlawfully. *Tucker*, 346 B.R. at 852.

This Court need not consider whether the Debtor's actions constituted larceny because

the Plaintiff acknowledges the checks were lawfully obtained. Pl's Post-Trial Mem. of Law, ECF

No. 23, at 17. The Plaintiff argues instead that the Debtor embezzled funds when she came into possession of the insurance checks and did not forward the value of those checks to the Plaintiff as she was required to do under the Assignment of Benefits. To establish embezzlement under § 523(a)(4), a plaintiff "must prove, by a preponderance of the evidence: (1) an appropriation of funds for [the defendant's] own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to [the defendant]; and the disbursal or use of those funds without explanation of reason or purpose." *Belfor USA Group, Inc. v. Hopkins (In re Hopkins)*, 469 B.R. 319, 323 (Bankr. W.D. Mo. 2012).

As previously stated, the Plaintiff obtained a default judgment against the Debtor in state court for conversion. Under New York law, "conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997) (quoting *Fashions Outlet of America, Inc. Maharaj*, 88 Civ. 7231, 1991 WL 143421, at *2 (S.D.N.Y. July 12, 1991) (internal quotations and citations omitted)). Accordingly, § 523(a)(4) will only except debts for conversion from discharge where fraudulent conduct was proven. *See Stanley Supply & Tool, Inc. v Smallwood (In re Smallwood)*, Case No. 20-42708-nhl, Adv. Pro. No. 20-1108-nhl, 2021 WL 4465560, at *8 (Bankr. E.D.N.Y. Sept. 28, 2021) (explaining a default judgment for conversion under New York law, without more, is insufficient to warrant summary judgment under § 523(a)(4)). Therefore, to succeed on its claim under § 523(a)(4), the Plaintiff must prove the Debtor engaged in fraudulent conduct.

The case *In re Hopkins* is instructive. In *Hopkins* a homeowner received a series of insurance checks after a fire damaged her home. 469 B.R. at 322. The homeowner had hired Belfor USA Group, Inc. to repair the fire damage to the house. *Id.* The homeowner properly

endorsed and turned over two insurance checks to Belfor USA Group, Inc. but later kept and deposited a check into her personal account. *Id.* at 322-23. The court found that by depositing the proceeds from the insurance check into her personal account, the homeowner acted with fraudulent intent. *Id.* at 323-24. Therefore, the court held that Belfor USA Group, Inc. sufficiently established the elements of embezzlement, and the debt was non-dischargeable. *Id.* at 324.

Here, like in *In re Hopkins*, the Debtor had previously forwarded insurance checks to the Plaintiff, as she was obligated to do. However, the Debtor later kept several insurance checks totaling $2,838.70 and did not turnover the proceeds to the Plaintiff. Spina testified at trial that the Debtor had full knowledge that she was obligated to forward the insurance checks to Plaintiff (Tr. at 20), and that she sought and obtained additional medical services from Plaintiff at a time when she had unpaid balances due to her conversion of the insurance proceeds (Tr. at 41). The evidence presented does not support a finding that the Debtor here was honest but unfortunate. Rather, the Debtor obtained medical services from the Plaintiff, received reimbursement from her insurance to pay for those services and kept the money for herself thus profiting from the transaction. The Court finds, based on the totality of the evidence presented in this case by the Plaintiff, which evidence is wholly unrefuted, that the Debtor obtained services from the Plaintiff and did not intend to pay for those services. Therefore, the Court finds fraudulent intent. *See Gazzola v. Brandt (In re Brandt)*, 565 B.R. 472, 487 (Bankr. D. Mass. 2017) (finding fraudulent intent through circumstantial evidence where the plaintiff was a credible witness, and his testimony was unrebutted). The Debtor's failure to turn over the proceeds of these insurance checks under these circumstances constitutes embezzlement. Thus, the $54,128.60 judgment debt is non-dischargeable under § 523(a)(4).

The Debtor argues that at most the $2,838.70 attributable to the converted insurance checks should be held to be non-dischargeable, and the remainder of the claim should be discharged. Def's Post-Trial Mem., ECF No. 22, at 12. However, the entirety of the Plaintiff's claim arose from the Debtor's conduct, and there is no basis to bifurcate the claim.[6]

Even though a plaintiff need only establish non-dischargeability under one subsection of § 523(a) to prevail, the Court will analyze the remaining claims under § 523(a)(6) and § 523(a)(2) of the Bankruptcy Code.

## III. Dischargeability Under § 523(a)(6)

A debt is non-dischargeable under § 523(a)(6) if it is one "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The plain language of the statute requires that the injury be both willful *and* malicious. *See Bethesda Hospital v. Kessnick (In re Kessnick)*, 174 B.R. 481, 484 (S.D. Ohio 1994). "[A] willful and malicious injury does not follow as a course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934). As such, the Court must consider whether the Debtor's actions were both willful and malicious.

"Willfulness is defined as headstrong and knowing conduct, and malicious is defined as conduct targeted at the creditor at least in the sense that the conduct is certain or almost certain to

---

[6]    A finding under § 523 extends to all liability arising from the conduct that established non-dischargeability. *See Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) ("Once it is established that specific money or property has been obtained by fraud, …. 'any debt' arising therefrom is excepted from discharge.").

cause harm." *In re Hopkins*, 469 B.R. at 324. This does not mean the Debtor must have merely acted intentionally in a way that caused harm to the Plaintiff, but rather that the Debtor acted with intent to harm the Plaintiff. *See id.*

The Court has already found that the Debtor converted the insurance checks. The issue now is whether the Debtor's conduct rises to the level of "willful and malicious" under § 523(a)(6). The Payment Agreement, which the Debtor signed, states: "All payments must be endorsed and forwarded to our office within 7 days of receipt along with the complete explanation of benefits. If you fail to forward any checks you receive from the insurance company or your deductible due under your policy within the above 7-day period, you will be held responsible for the full amount charged for your surgery, plus the cost of legal fees, legal costs, and disbursements, with no discount granted." Pl.'s Ex. 2. The record is clear and uncontroverted that the Debtor was aware of her obligation to turn over the insurance checks (Pl.'s Ex. 1; Tr. at 40), and she failed to do so without explanation. This establishes the "willful" element of the statute. As for malice, the Court finds that the Debtor knew the Plaintiff would be harmed as a result of her actions and it was in fact the Debtor's intention to harm the Plaintiff by keeping for herself the insurance proceeds when she clearly understood her obligation to turn them over to the Plaintiff. *Cf. In re Kessnick*, 174 B.R. at 485 (finding no malice where (1) the explanation of benefits and benefits check did not prominently display the name of the patient (the defendant's daughter), (2) the hospital's assignment form did not specify that the defendant was to pay all money paid by the insurance company for his daughter's care, and (3) the hospital had made a gross error, subsequently corrected, in the defendant's daughter's hospital bill); *In re Tucker*, 346 B.R. at 853-54 (finding no malice where debtor, who failed to turn over insurance

reimbursements, testified she intended to pay off the debt in installments and debtor did in fact make some installment payments).

What distinguishes this from a simple breach of contract case is the Plaintiff's uncontroverted allegation that the Debtor knowingly misled and deceived the Plaintiff into performing additional medical services at a time when the Debtor knew she was intentionally breaching their agreement by her failure to turn over the insurance checks. Compl. ¶ 81. The Debtor had the opportunity to present evidence to controvert the Plaintiff's allegation that she acted maliciously, and she utterly failed to do so.[7]

Consequently, the Court finds the Debtor's conduct, which gave rise to the Judgment and claim herein in the amount of $54,128.60, was willful and malicious and therefore non-dischargeable under § 523(a)(6).

## IV. Dischargeability Under § 523(a)(2)

A debt is non-dischargeable under § 523(a)(2)(A), to the extent it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The plaintiff need only prove one element of § 523(a)(2)(A): either false pretenses, false representation or actual fraud.

---

[7]    The facts presented here differ from *In re Kessnick*, cited above, where the defendant presented testimony that he believed the insurance check was paid to him for medical insurance claims he made on his own behalf, not for his daughter. There, the court found that the plaintiff failed to prove malice by a preponderance of evidence. *Kessnick*, 174 B.R. at 486. Similarly, in *In re Tucker*, the debtor testified and offered explanations for her conduct which negated malice.

A. *False Pretenses*

To establish false pretenses under § 523(a)(2)(A), a creditor must show: "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant." *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005) (citing *Sandek v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)). A false pretense may include "any scam, scheme, subterfuge, artifice, deceit, or chicane in the accomplishment of an unlawful objective." *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). Additionally, a false pretense may include an "implied misrepresentation or conduct intended to create a false impression." *Id.* (quoting *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994)). Furthermore, "[f]ailure to disclose material facts on which a transaction depends constitutes false pretenses within the statute." *Hambley*, 329 B.R. at 396 (citing *Farraj v. Soliz (In re Soliz)*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996)).

At trial, Spina testified that the Debtor brought in some checks hoping the Plaintiff would not notice other checks were missing. Tr. at 22. The Plaintiff argues that the Debtor's conduct was intended to create and foster a false impression that she intended to honor her obligations to the Plaintiff. Pl.'s Post-trial Mem. of Law, ECF No. 23, at 14. By signing the Assignment of Benefits and Payment Agreement, the Debtor was aware that her failure to turn over the checks would render her liable for full payment for the services. Pl.'s Ex. 2. She initially turned over the insurance checks and developed a good reputation for doing so. She then used this reputation to create a false impression that she would turn over the insurance checks upon receipt. Spina

testified that the Plaintiff performed additional services on the Debtor despite non-payment based on the Debtor's previous history with the practice. Tr. at 41. The Debtor did not offer any evidence to dispute these allegations. As such, the evidence shows that the Debtor obtained services from the Plaintiff under false pretenses.

B. *False Representation*

To establish a false representation under § 523(a)(2), a plaintiff must prove the defendant "(1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiff to turn over money or property to the defendant." *Varble v. Chase (In re Chase)*, 372 B.R. 133, 137 (Bankr. S.D.N.Y. 2007) (citing *Sandek v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)). The key difference that makes conduct a false representation rather than a false pretense is an explicit, definable statement by the debtor that results in misrepresentation. *See GSY Corp. v. Hazan (In re Hazan)*, Case No. 15-41018-nhl, Adv. Pro. No. 15-1070-nhl, 2018 WL 4718976, at *6 (Bankr. E.D.N.Y. Sept. 28, 2018).

At trial, Spina testified that the Debtor falsely stated that she did not receive the insurance checks when she came in for further treatment. Tr. at 21.[8] According to the Plaintiff, this induced the Plaintiff to continue treating the Debtor without requiring advance payment for such additional services. The Plaintiff argues the Debtor made these statements even though she knew that she had already stolen one or more insurance checks. The Debtor did not present evidence to controvert the Plaintiff's allegation of false representations. Accordingly, the Court finds that the Debtor obtained services from the Plaintiff based on a false representation when she obtained

---

[8] This assertion is further supported by Spina's trial testimony that it was the Plaintiff's practice for patients who had outstanding balances to be informed of the balance at the time the patient showed up for an appointment. Tr. at 41.

17

those services after falsely representing that she had not received insurance checks which were to be turned over to the Plaintiff.

### C.  Actual Fraud

To establish a debt as non-dischargeable due to actual fraud, a creditor must show "anything that counts as 'fraud' and is done with wrongful intent." *Husky International Electronics, Inc. v. Ritz*, 578 U.S. 356, 360 (2016). The Second Circuit's interpretation of actual fraud based on a misrepresentation still requires "a false representation, scienter, reliance and harm." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006). A creditor must prove the debtor intended to commit the fraud or deceit. "[I]ntent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the lender." *Hong Kong Deposit and Guar. Co. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990) (quoting *First Service Corp. v. Schlickmann (In re Schlickmann)*, 6 B.R. 281, 282 (Bankr. D. Mass. 1980)).

As previously discussed, the uncontroverted evidence in this case indicates the Debtor intentionally mislead the Plaintiff into believing that she had not yet received insurance checks in which the Plaintiff held a legal right as assignee. In doing so, the Debtor deceived the Plaintiff into performing additional services, at a time when, the Court finds, the Debtor had no intention of paying for those services. Accordingly, the Court finds the preponderance of the evidence indicates the Debtor procured services from the Plaintiff by actual fraud.

### D.  Justifiable Reliance

Section 523(a)(2)(A) also requires justifiable reliance. *See Field v. Mans*, 516 U.S. 59, 73-75 (1995). The creditor only needs to establish its reliance in fact, but the claim to reliance

cannot be so unreasonable as to defeat a finding of such reliance. *See In re Esposito*, 44 B.R. 817, 824 (Bankr. S.D.N.Y. 1984) (quoting *In re Garman*, 643 F.2d 1252, 1258 (7th Cir. 1980)). A creditor must "use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field*, 516 U.S. at 71 (quoting Restatement (Second) of Torts (1976) § 541, Comment *a*).

At trial, the Plaintiff's witness explained that in instances where the patient has signed the Assignment of Benefits and Payment Agreement, the Plaintiff is willing to wait for the insurance company to send the checks to the patient before requiring payment directly from the patient. Tr. at 27. The Plaintiff relied on the Debtor's false pretenses, false representations, and actual fraud when it continued to provide services to the Debtor. The Court finds this reliance to be justifiable based on the signed agreements and prior dealings between the parties as testified to by Spina. Consequently, the Court finds the Debtor's conduct, which gave rise to the Judgment and claim herein in the amount of $54,128.60, was incurred by false pretenses, false representations, and actual fraud, and therefore is non-dischargeable under § 523(a)(2).

## CONCLUSION

For the reasons set forth herein, the Plaintiff's claim in the amount of $54,128.60 is non-dischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6).

Dated: Central Islip, New York
      January 30, 2023

Robert E. Grossman
United States Bankruptcy Judge